IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JULIA PEARSON, Individually and as Administrator of the Estate of JOEL PEARSON,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>　　　　Defendant. | No. C07-0111<br><br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   FACTUAL BACKGROUND & PROCEEDINGS. . . . . . . . . . . . . . . . 2
      A.  Facts Relating to Joel Pearson's Death. . . . . . . . . . . . . . . . 2
      B.  Employee Benefit Plan. . . . . . . . . . . . . . . . . . . . . . . . 4
      C.  Legal Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  RELEVANT PLAN PROVISIONS. . . . . . . . . . . . . . . . . . . . . . 7

IV.   JURISDICTIONAL ISSUE. . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . 10

VI.   LEGAL ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      D.  AD&D Benefits. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      E.  Extra Accident Death Benefit. . . . . . . . . . . . . . . . . . . . 17

VII.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VIII. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## I. INTRODUCTION

This matter comes before the Court on the Petition at Law and Jury Demand[1] filed by Plaintiff Julia Pearson in the Iowa District Court for Linn County on September 24, 2007. Defendant Metropolitan Life Insurance Company ("MetLife") filed a Notice of Removal (docket number 2) on October 18, 2007. Pearson, as Administrator of the Estate of Joel Pearson, seeks accidental death and dismemberment ("AD&D") benefits, and an "extra accident death benefit" related to seat belt usage, provided in an employee benefit plan issued to her deceased husband, Joel Pearson, by Rockwell Collins, Inc.[2] The issue was fully briefed and submitted without oral argument.

## II. FACTUAL BACKGROUND & PROCEEDINGS

### A. Facts Relating to Joel Pearson's Death

At 6:38 p.m. on October 1, 2005, Joel Pearson was operating a vehicle traveling east on I-80, near Oxford, Iowa, in Johnson County, when his vehicle began weaving on the interstate. According to the accident report, Joel Pearson's vehicle:

> drifted onto the right shoulder into the south ditch. [His vehicle] then came left back onto the roadway traveled across the eastbound lanes, entered the median[,] crossed over the westbound lanes and left the roadway in the north ditch. [The vehicle] struck a culvert in the north ditch and began to roll. [The vehicle] came to rest on its wheels in the [westbound] lanes.

(Administrative Record at ML 0031.) The "Case Summary" found in the autopsy report states:

---

[1] Plaintiff's Petition at Law and Jury Demand may be found in Defendant Metropolitan Life Insurance Company's Statement Pursuant to Local Rule 81.1 (docket number 2-2) at 6-8.

[2] Pearson's Petition does not identify any precise legal theory. Instead, her Petition concludes: "WHEREFORE, Plaintiff pleads for the accidental death benefits payable under the policy, as well as the extra death benefits and as [sic] for costs of this action and such other and further relief as may be just and equitable in the premises." *See* MetLife's Statement Pursuant to Local Rule 81.1 at 7.

> The first responder found the patient with no pulse and no
> respiratory movements. Cardiopulmonary resuscitation (CPR)
> was performed, but the patient remained in asystole. The
> resuscitation attempts were not successful. The patient arrived
> at UIHC on 10/1/05 @ 1913 and was pronounced dead at
> 10/1/05 at 1934.

(Administrative Record at ML 0034.)

An autopsy was performed on October 2, 2005. According to the "Final Autopsy Diagnoses," the "cause" of Joel Pearson's death was "acute myocardial infarction as a result of severe coronary artery atherosclerosis," and the "manner" of his death was "natural."[3] The autopsy report "Case Summary" stated:

> In the present case it is likely that the patient suffered a
> myocardial infarction prior to the time of the car accident,
> since the microscopic changes observed require some hours to
> develop. It is likely he suffered an arrhythmia, lost
> consciousness and/or arrested with the resultant motor vehicle
> accident.
>
> . . .
>
> Based on the known circumstances of death and autopsy
> examination[,] the cause of death is attributed to acute
> myocardial infarction.
>
> The manner of death is natural.

(Administrative Record at ML 0034.)

Nearly two months later, on December 1, 2005, a supplemental report was issued by Patricia A. Kirby, M.D. According to the supplemental report, "[t]his case was discussed with Dr. Nashelsky who felt that the injuries to the head and neck sustained by the patient during his vehicle accident were sufficient to call the manner of death accident rather than natural."[4]

---

[3] *See* Administrative Record at ML 0033.

[4] *Id.* at ML 0032.

## B. Employee Benefit Plan

At the time of his death, Joel Pearson participated in an employee welfare benefit plan ("the Plan") offered through his employer, Rockwell Collins, Inc. Defendant MetLife is the insurer and administrator of the Plan. The Plan included AD&D benefits and an extra accident death benefit. The Plan provides that AD&D benefits "will be paid for death or dismemberment caused by an accident that occurs while coverage is in effect. Such accident must be the sole cause of the injury and that injury must be the sole cause of death or dismemberment."[5] The extra accident death benefit ($10,000) is paid "[i]f death occurs while you are insured, as a result of an automobile accident and while you are wearing a seatbelt[.] . . ."[6]

On October 11, 2005, Plaintiff Julia Pearson, the named beneficiary in Joel Pearson's employee benefit plan, filed a claim for basic life and AD&D benefits.[7] MetLife paid the claim for basic life insurance benefits ($90,000), but denied the claim for AD&D benefits (an additional $90,000). In a letter dated April 19, 2006, MetLife explained its reasoning for denying the AD&D benefits. The letter provides in pertinent part:

> The Autopsy Report states, the cause of death as acute myocardial infarction as a result of a severe coronary artery atherosclerosis and the manner of death due to natural causes. . . .
>
> Consequently, accidental death benefits are not payable on the exclusion quoted above,[8] because the decedent's death was due

---

[5] *Id.* at ML 0063.

[6] *Id.* at ML 0064.

[7] *Id.* at ML 0045-0047.

[8] In the letter, MetLife refers to the following exclusion in the Summary Plan Description:

(continued...)

> to or caused by a physical illness. That is the decedent's suffering an arrhythmia and losing consciousness which caused the insured to lose control of the vehicle. The fact that Dr. Kirby feels the injuries to the decedent's neck and back were sufficient to call the manner of death an accident does not negate the initial autopsy report that states the injuries were an aftermath to the decedent's physical illness that caused his death. Accordingly, we must deny this claim.

(Administrative Record at ML 0018-0019.)

On June 29, 2006, Pearson sent MetLife a letter appealing the denial of her claim. In her letter, Pearson argued:

> The preliminary results of the autopsy concluded the cause of death to be 'blunt force trauma to the head and neck.' And the State of Iowa Death Certificate states the cause of death was 'blunt force injuries of the head and neck.' While there was evidence that there was a heart attack, there is not conclusive evidence the heart attack was the cause of death. It is possible my husband could have survived his heart attack. Obviously, the final autopsy results are subjective. It is my understanding there was some debate among the University of Iowa Hospital staff, which is why Dr. Nashelsky was brought in for consultation. He is a specialist, and it was his ruling that the head and neck injuries sustained by my husband during his vehicle accident were sufficient to call the manner of death accidental rather than natural. In other words, it was the

---

[8](...continued)

**AD&D Insurance**
> Benefits will be paid for death or dismemberment caused by an accident that occurs while coverage is in effect. Such accident must be the sole cause of the injury and that injury must be the sole cause of death or dismemberment.

The Plan further goes on to state:
> You cannot collect benefits for losses caused by:
> - Physical or mental illness

*See* Administrative Record at ML 0018.

5

> injury rather than the heart attack that was the cause of death. It was the specialist, Dr. Nashelsky, whose conclusion precipitated the need for a supplemental autopsy report which emphasized the head and neck injury being the fatal injury. Therefore, the death certificate rules the head and neck injury as the cause of death and that these injuries were caused by the accident.

(Administrative Record at ML 0015.)

On August 14, 2006, MetLife upheld its denial of Pearson's claim for AD&D benefits. In the denial letter, MetLife addressed the supplemental autopsy report which changed the manner of death from natural to accident. The letter provides:

> You also point to the supplemental autopsy report, in which Dr. Nashelsky changed the manner of death to accident from natural. That the death certificate identified the manner of death as an 'accident' is immaterial. Courts have found that the selection of 'accident' by the coroner for this purpose is not conclusive with regard to claims determinations under accidental death coverage. (citing cases)

(Administrative Record at ML 0013.) MetLife concluded:

> Your loss, though unexpected and tragic, fails to meet the requirements for coverage because it was caused by physical illness, and was not solely accidental. That is, the decedent's cardiac arrhythmia, loss of consciousness, and heart attack caused him to cease controlling his vehicle. Accordingly, for the above reasons, we must uphold our original denial of your claim.

(Administrative Record at ML 0013.)

### C. Legal Proceedings

On September 24, 2007, Pearson filed a Petition at Law and Jury Demand in the Iowa District Court for Linn County. MetLife filed a Notice of Removal (docket number 2) on October 18, 2007. On November 9, 2007, MetLife filed an Answer (docket number 6). On May 15, 2008, Pearson filed her Brief (docket number 19). On June 16, 2008, MetLife filed a "Brief in Support of a Judgment Entry in Its Favor and in Opposition to

the Plaintiff's Brief" (docket number 20). Pearson filed a Reply Brief (docket number 21) on June 27, 2008. On July 24, 2008, MetLife filed a "Sur-Reply in further Support of a Judgment Entry in Its Favor" (docket number 25). On November 11, 2008, Chief Judge Linda R. Reade referred this matter to a Magistrate Judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. RELEVANT PLAN PROVISIONS

The accidental death benefits provided to Rockwell Collins, Inc. employees are set forth in the Employee Benefit Plan ("the Plan") as follows:

> We will pay Accidental Death or Dismemberment Benefits for a Covered Loss shown in Section C if you are injured in an accident which occurs while you are covered for Accidental Death or Dismemberment Benefits; and if:
>
> 1. that accident is the sole cause of the injury; and
>
> 2. that injury is the sole cause of that Covered Loss; and
>
> 3. that Covered Loss occurs not more than 90 days after the date of that accident.
>
> In addition, we will pay a benefit amount of $10,000 for the loss of your life that results from injuries sustained while driving or riding in a private Passenger Car if your Seat Belt was properly fastened.

(Administrative Record at ML 0108.)

The Summary Plan Description ("SPD") for the Plan provides that accidental death or dismemberment benefits "will be paid for death or dismemberment caused by an accident that occurs while coverage is in effect. Such accident must be the sole cause of the injury and that injury must be the sole cause of death or dismemberment." *Id.* at ML 0063. The SPD describes the "extra accident death benefit" as follows:

> If death occurs while you are insured, as the result of an automobile accident and while you are wearing a seat belt, an Extra Accident Death benefit of $10,000 is payable in addition

7

to any other Accidental Death or Dismemberment Insurance
benefit which may be payable. Proof must be submitted with
the death claim that, at the time of the automobile accident,
you were wearing a seat belt.

(Administrative Record at ML 0064.)

Benefits cannot be collected for losses caused by: (1) physical or mental illness; (2) an infection, except if it is caused by a visible, external wound sustained in an accident; (3) suicide or attempted suicide; (4) injuring oneself on purpose; (5) hernia or ptomaine; (6) war or any act of war whether declared or undeclared unless the injury which results occurs outside Continental North America, Hawaii or any Territory of the United States; or (7) committing or trying to commit a felony or other serious crime or an assault.[9]

## IV. JURISDICTIONAL ISSUE

Pearson argues that the "[c]ontrolling [i]nsurance [c]ontract specifically grants insured the right to sue in state or Federal Court. Right to restrict proceedings to a non-jury administrative proceeding in Federal Court was waived by contract."[10] Pearson points to language in the Plan which states: "If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court."[11] Pearson argues that "[t]his express provision authorizing suit in state court is a waiver of the right to remove."[12] Pearson maintains that this case should be sent back to state court and proceed as a contract action to a jury.

---

[9] See Administrative Record at ML 0109-0110, and 0063-0064.

[10] See Pearson's Brief at 3.

[11] See Administrative Record at ML 0128. See also the SPD in the administrative record at ML 0071 ("If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court.").

[12] See Pearson's Brief at 4.

Both the SPD and the Plan are governed by the Employment Retirement Income Security Act of 1974 (ERISA); 29 U.S.C. §§ 1001 et seq.[13] Pursuant to 29 U.S.C. § 1132(a)(1)(B), a beneficiary under an ERISA benefits plan may bring a civil action to recover benefits due under the terms of the plan, enforce his or her rights under the terms of the plan, or clarify his or her rights to future benefits under the terms of the plan. *Id.* Furthermore, 29 U.S.C. § 1144(a) expressly preempts state laws that "relate to" an ERISA plan. *Thompson v. Gencare Health Systems, Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000) (per curiam). "Therefore, ERISA remedies preempt 'state common law tort and contract actions asserting improper processing of a claim for benefits' under an ERISA plan." *Id.* (quoting *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 43 (1987)); *see also Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 62-63 (1987) (explaining that common law contract claims are preempted by ERISA). Additionally, "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of [29 U.S.C.] § [1132(a)] removable to federal court." *Metropolitan Life Insurance Co.*, 481 U.S. at 66; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 221 (2004) ("We hold that respondents' causes of action, brought to remedy only the denial of benefits under ERISA-regulated benefit plans, fall within the scope of, and are completely pre-empted by, ERISA § [1132](a)(1)(B), and thus removable to federal district court."). Here, Pearson's contract claim is preempted by ERISA because the claim is "related to" the alleged improper processing of a claim for AD&D benefits and extra accident death benefit. Accordingly, the Court finds that this matter was properly removed to federal court for judicial review of MetLife's benefits determination pursuant to ERISA.[14]

---

[13] *See* Administrative Record at ML 0071-0072; 0128-0129.

[14] The Court also notes that Plaintiff did not file a motion to have the case remanded to state court. *See* 28 U.S.C. § 1447.

## V. STANDARD OF REVIEW

"'ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.'" *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir. 2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)). Review of plan determinations is *de novo*, unless the plan provides discretionary authority to the plan administrator "'to determine eligibility for benefits or to construe the terms of the plan.'" *Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In this case, MetLife is given discretion to determine eligibility for plan benefits and interpret the plan's terms.[15] When a plan administrator is given such discretion, the court must review a decision by the administrator for abuse of discretion. *Shelton*, 285 F.3d at 642. "'This deferential standard reflects [the] general hesitancy to interfere with the administration of a benefits plan.'" *Id.* (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). In *Hunt v. Metropolitan Life Insurance Co.*, 425 F.3d 489 (8th Cir. 2005), the Eighth Circuit Court of Appeals described this standard of review as follows:

> Because the plan gives [the plan administrator] discretion to determine eligibility, we review the administrator's decision for abuse of discretion. Under this standard of review, we consider whether the administrator adopted a "reasonable interpretation" of uncertain terms in the plan, and whether the administrator's decision was supported by substantial evidence.

*Id.* at 490 (citations omitted). When the abuse of discretion standard is applied, the reviewing court "must affirm if a 'reasonable person could have reached a similar decision, given the evidence before him [or her], not that a reasonable person would have

---

[15] The SPD designates MetLife as the agent to administer the Plan. *See* Administrative Record at ML 0073. Additionally, the Plan provides that the "Plan Administrator . . . shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." *See* Administrative Record at ML 0128.

10

reached that decision.'" *Smith v. Unum Life Insurance Co. of America*, 305 F.3d 789, 794 (8th Cir. 2002) (quoting *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). A reasonable decision is a decision which is based on substantial evidence that was before the plan administrator. *Id.* Substantial evidence is evidence which a reasonable mind could accept as adequate to support a conclusion. *Johnson*, 424 F.3d at 738.

"When reviewing a denial of benefits by an administrator who has discretion[,] . . . a reviewing court, 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'" *King v. Hartford Life and Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999)). Furthermore,

> an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator.

*King*, 414 F.3d at 1000.

Recently, the United States Supreme Court determined that a conflict of interest is created when the administer of a benefit plan, both determines whether an employee is eligible for benefits and then pays the benefits. *Metropolitan Life Insurance Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343, 2346 (2008). The United States Supreme Court further determined that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Id.* (citing *Bruch*, 489 U.S. at 115). In discussing *Glenn*, the Eighth Circuit Court of Appeals noted that:

> the existence of a conflict did not lead the [United States Supreme] Court to announce a change in the standard of review. We are to review an administrator's discretionary

11

> benefit determination for abuse of discretion. The [United
> States Supreme] Court concluded that 'a conflict should be
> weighed as a factor in determining whether there is an abuse
> of discretion.'

*Wakkinen v. UNUM Life Insurance Co. of America*, 531 F.3d 575, 581 (8th Cir. 2008) (citation and quotation omitted).

In summary, if the question before the Court is whether the plan administrator abused its discretion, then the Court:

> will not disturb the administrator's decision if it was reasonable. We measure reasonableness by whether substantial evidence exists to support the decision, meaning 'more than a scintilla but less than a preponderance.' *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998). We examine only the evidence that was before the administrator when the decision was made, and we are to determine whether a reasonable person could have -- not would have -- reached a similar decision. *Phillips-Foster v. UNUM Life Ins. Co.*, 302 F.3d 785, 794 (8th Cir. 2002).

*Wakkinen*, 531 F.3d at 583.

## VI. LEGAL ANALYSIS

### D. AD&D Benefits

MetLife argues that under an abuse of discretion standard, its benefits decision was correct, entirely reasonable, and supported by substantial evidence. MetLife relies on the following evidence to support its argument: (1) the autopsy report, dated October 2, 2005, provides that Mr. Pearson's death was caused by an acute myocardial infarction and his manner of death was natural; (2) Mr. Pearson's death was caused by a physical illness, the heart attack; and (3) because the death was caused by a physical illness, the death was not solely accidental and the physical illness exclusion applies.

Pearson offers very little argument except to assert that the "[b]urden of proof should be on Metropolitan Life Insurance Company to show heart attack was a cause of the accident or part of the cause, not a result of . . . the accident, and was causal of the

death."[16] Pearson also notes that the "autopsy shows that blunt force, and injuries to the head and neck and spine caused death, either by themselves, or arguably caused the heart attack."[17] Pearson offers no authority to support her positions.

In its initial letter denying AD&D benefits, MetLife explained:

> accidental death benefits are not payable . . . because the decedent's death was due to or caused by a physical illness. That is the decedent's suffering an arrhythmia and losing consciousness which caused the insured to lose control of the vehicle. The fact that Dr. Kirby feels the injuries to the decedent's neck and back were sufficient to call the manner of death an accident does not negate the initial autopsy report that states the injuries were an aftermath to the decedent's physical illness that caused his death.

(Administrative Record at ML 0019.) In its second letter denying AD&D benefits, MetLife stated that Mr. Pearson's death failed:

> to meet the requirements for coverage because it was caused by physical illness, and was not solely accidental. That is, the decedent's cardiac arrhythmia, loss of consciousness, and heart attack caused him to cease controlling his vehicle.

(Administrative Record at ML 0013.) MetLife also addressed the Supplemental Report, dated December 1, 2005.[18] MetLife cited several cases for the proposition that a death certificate identifying "the manner of death as an 'accident' is immaterial. Courts have

---

[16] *See* Pearson's Brief at 3.

[17] *Id.* at 3-4.

[18] The Supplemental Report provided:
> [t]his case was discussed with Dr. Nashelsky who felt that the injuries to the head and neck sustained by the patient during his vehicle accident were sufficient to call the manner of death accident rather than natural.

*See* Administrative Record at ML 0032.

found that the selection of 'accident' by the coroner for this purpose is not conclusive with regard to claims determinations under accidental death coverage."[19]

Of the cases cited by MetLife, *Sangster v. Metropolitan Life Insurance Co.*, 54 F. Supp. 2d 708 (E.D. Mich. 1999) is most significant to this matter. In *Sangster*, an insurance company denied accidental death benefits for Brenda Sangster, who died of cardiac dysrhythmisa due to severe coronary artery disease following a car accident. *Id.* at 709-10. The accident involved a collision with another automobile which caused the vehicle Sangster was riding in to roll over. *Id.* at 710. Sangster only suffered a small cut on her hand, but shortly thereafter, "began having difficulty breathing, went into cardiorespiratory arrest, and died despite resuscitative efforts." *Id.* The insurance company denied Sangster's Estate's claim for accidental death benefits for the following reasons:

> First, both the death certificate and the autopsy report indicate that Ms. Sangster's death was due to her pre-existing severe coronary artery and heart disease. Although she may have suffered stress as a result of the car accident, her heart and artery disease was the proximate and substantial cause of her death. Therefore, because her death was not due to injuries caused *solely* by an accident, no AD&D benefits are payable. Second, because Ms. Sangster's death was due to her heart and artery disease, AD & D benefits are not payable under the Plan's exclusion for losses caused by physical illness.

*Id.* The district court applied the arbitrary and capricious standard to determine whether the insurance company's decision to deny accidental death benefits was rational in light of the plan's accidental death provisions. *Id.* at 712. The district court concluded that under the plan provisions, the insurance company's denial of accidental death benefits was reasonable. *Id.* The district court reasoned:

> While the coroner concluded that Brenda Sangster's death was accidental, the facts and reasoning in support of that

---

[19] *See* Administrative Record at ML 0013.

14

> conclusion show that Brenda Sangster's severe heart disease and the automobile accident were interdependent causes of her death. Indeed, the coroner's report establishes that neither the heart disease nor the accident was the sole cause of her death.
>
> The disagreement between the coroner's conclusion and the [insurance company's] conclusion has a reasonable basis. Simply put, the Plan adopts a more stringent definition of accidental death for its purposes than the coroner did for his purposes. The Plan requires the [insurance company] to ask whether accidental injury was the sole cause of death, while it is evident from the coroner's report that he asked only whether the accident had a direct relation to Brenda Sangster's death. An affirmative answer to the coroner's broad causation test does not logically compel an affirmative answer to the Plan's narrow causation test. Accordingly, it is reasonable for the [insurance company] to determine that the coroner's conclusion did not bind his/her examination of the evidence.

*Id.* The district court concluded that the insurance company's denial of accidental death benefits was not arbitrary and capricious and affirmed the decision of the insurance company to deny benefits. *Id.* at 713.

Other courts have reached similar conclusions. *See Dixon v. Life Insurance Co. of North America*, 389 F.3d 1179, 1184-85 (11th Cir. 2004) (Upholding denial of accidental death benefits where pre-existing heart disease "substantially contributed" to Dixon's death "regardless of whether the auto accident was the immediate cause in that it triggered his heart attack."); *Danz v. Life Insurance Co. of North America*, 215 F. Supp. 2d 645 (D. Md. 2002) (Upholding denial of accidental death benefits because plaintiffs "failed to prove by a preponderance of the evidence that Danz's heart condition did not substantially contribute to his death."); *Chavez v. GHS Property and Casualty Insurance Co.*, 2008 WL 2557471, at *5-6 (S.D. Tex. 2008) (Upholding denial of accidental death benefits where fire department records, emergency room records, and the death certificate did not mention Chavez's car accident as a contributing cause to the myocardial infarction he suffered after the accident. "Even assuming that the accident was a contributing cause of Pablo Chavez's

death, . . . [there is] no evidence in the record showing that the car accident was 'independent of all other causes' of Pablo Chavez's death."); *Criss v. Hartford Accident and Indemnity Co.*, 1991 WL 640066, at *9 (E.D. Mich. 1991) ("The insurance policy specifies on its face that the cause of death must be an accident independent of any other cause. In this instance, both parties agree that the decedent's heart disease contributed at least partly to the decedent's death. As such, following the plain language of the insurance agreement, this Court must find that the Plaintiff's claim is precluded by the contractual language.").

In this case, the record provides two reasons for Joel Pearson's death: (1) acute myocardial infarction and (2) blunt force injuries of the head and neck from the car accident. MetLife based its denial of Pearson's AD&D benefits claim on the Plan provision which requires the accident to be the "sole cause" of the injury and the injury to be the "sole cause" of death.[20] MetLife also based its denial decision on the Plan provision which provides that benefits cannot be recovered for losses caused by physical illness.[21] Applying an abuse of discretion standard, the Court finds that MetLife's decision is a reasonable interpretation of the Plan provisions and is supported by substantial evidence in the record. *See Hunt*, 425 F.3d at 490. Similar to *Sangster*, the Court finds that the disagreement between the findings of the supplemental autopsy report and death certificate, and MetLife's denial of benefits, is reasonably based on the Plan's requirement that MetLife determine whether the accidental injury was the *sole* cause of death, rather than whether the accident had some relation to Joel Pearson's death. *See Sangster*, 54 F. Supp. 2d at 712. The finding that Joel Pearson's head and neck injuries were "sufficient to call the manner of death accident rather than natural" does not compel MetLife to conclude that those injuries were the sole cause of death. *See Id.* This is especially the case where the initial autopsy report identifies the cause of death as an acute

---

[20] *See* Administrative Record at ML 0063, ML 0108.

[21] *Id.* at ML 0063, ML 0109.

myocardial infarction. The conflict of interest factor discussed in *Glenn* does not compel a different result, because MetLife's denial of AD&D benefits was reasonably based on the Plan provisions and the evidence in the record. Accordingly, the Court finds that MetLife's decision to deny AD&D benefits should be upheld because a reasonable person could have reached a similar decision. *See Wakkinen*, 531 F.3d at 583.

### E. Extra Accident Death Benefit

Pearson also requests that the Court award her the "extra accident death benefit" of $10,000, relating to seat belt usage. Pearson argues in her brief that the requirement that "the accident must be the sole cause of death" is not applicable to the additional seat belt benefit. (*See* Pearson's Brief at 5.) Pearson offers no further argument or authority on this issue. MetLife does not even address the issue of the extra accidental death benefit.

In the section dealing with AD&D benefits, the Plan provides:

> [W]e will pay a benefit amount of $10,000 for the loss of your life that results from injuries sustained while driving or riding in a private Passenger Car if your Seat Belt was properly fastened.

(Administrative Record at ML 0108.) The Plan further provides that:

> The correct position of the Seat Belt must be certified by the investigating officer. A copy of the police report must be submitted with the claim.

(Administrative Record at ML 0109.)

The Summary Plan Description provides:

> If death occurs while you are insured, as the result of an automobile accident and while you are wearing a seat belt, an Extra Accident Death benefit of $10,000 is payable in addition to any other Accidental Death or Dismemberment Insurance benefit which may be payable. Proof must be submitted with the death claim that, at the time of the automobile accident, you were wearing a seat belt.

(Administrative Record at ML 0064.)

17

A police report was submitted with the claim, but the report is silent regarding whether Joel Pearson was wearing his seat belt at the time of the automobile accident.[22] The October 2, 2005 autopsy report states that "Mr. Pearson was a restrained driver of a single vehicle roll over accident."[23] Thus, it would appear that Joel Pearson was wearing a seat belt at the time of his death, although there is no indication its "correct position" was "certified by the investigating officer."

According to the Plan, Pearson is entitled to the extra accident death benefit if Joel Pearson was wearing his seat belt and the loss of his life "result[ed] from injuries sustained" in the automobile accident. Similarly, the SPD indicates that the extra benefit is payable if death occurs "as the result of an automobile accident."

Under ERISA, a claimant is entitled to a full and fair review of adverse benefit determinations. 29 C.F.R. § 2560.503-1(h). "'The persistent core requirements' of full and fair review include 'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his [or her] decision.'" *Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005) (quoting *Grossmuller v. Int'l Union, UAW*, 715 F.2d 853, 858 n. 5 (3d Cir. 1983)).

Here, MetLife did not address the extra accident death benefit or articulate a decision on this issue. Thus, on the record before the Court, there is nothing to review. *See Abram*, 395 F.3d at 886. Therefore, the Court finds it appropriate to remand this matter for further development of this issue, including the issuance of a decision on the issue by MetLife. *Id.* at 887 ("A reviewing court must remand a case when the [plan administrator] fails to make adequate findings or explain the rationale for its decision."); *see also King*, 414 F.3d at 1005 ("The statute affords the courts a range of remedial powers under ERISA, 29 U.S.C. § 1132(a), and returning the case to a plan administrator

---

[22] *Id.* at ML 0030-31.

[23] *See* Administrative Record at ML 0034.

for further consideration is often appropriate."). On remand, MetLife must address whether Pearson is entitled to the extra accident death benefit, explain the reasons for its determination, and discuss the evidence it relied on in making its determination.

## VII. CONCLUSION

The Court concludes and recommends that MetLife's decision to deny AD&D benefits should be affirmed. The Court also recommends that the issue of the extra accident death benefit relating to seat belt usage should be remanded for further consideration and issuance of a decision on that issue.

## VIII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **AFFIRM** MetLife's decision to deny AD&D benefits and **REMAND** on the issue of the extra accident death benefit relating to seat belt usage for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the District Court.

DATED this 6th day of January, 2009.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA